UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
——————————————————————

JAMIE L. GENITO,

                        Plaintiff,

v.                                                      7:16-CV-0143
                                                        (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
——————————————————————

APPEARANCES:                                    OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP    LAWRENCE D. HASSELER, ESQ.
 Counsel for Plaintiff
307 State Street
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                     DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Jamie L. Genito

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g), are the parties' cross-motions for judgment on the pleadings.

(Dkt. Nos. 10, 14.)  For the reasons set forth below, Plaintiff's motion for judgment on the

pleadings is denied, and Defendant's motion for judgment on the pleadings is granted.  The

Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's

Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1979 and was 35 years old at the date of the ALJ decision at issue in this appeal.  Plaintiff reported obtaining her GED and had past work manufacturing bowling pins, putting ribbons on boxes, and working the front counter and drive-thru at a fast food restaurant.  Generally, Plaintiff alleged disability consisting of pain in her lower back and right hand, bipolar disorder, anxiety disorder, and difficulty concentrating.

### B.    Procedural History

Plaintiff applied for Disability Insurance Benefits on April 10, 2006, alleging disability beginning May 17, 2002.  Plaintiff's application was denied initially, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On August 29, 2008, ALJ Verner R. Love rendered a Fully Favorable decision, finding Plaintiff disabled beginning May 17, 2002.  (T. 51-56.)  On December 7, 2012, the Agency determined that Plaintiff's disability would cease on December 11, 2012[1] due to medical improvement related to her ability to work, and thus her benefits were discontinued. (T. 57-59.)  The cessation was affirmed on May 9, 2013.  (T. 60.)  Plaintiff timely requested a hearing and subsequently appeared at a video hearing before ALJ Bruce S. Fein on April 18, 2014.  (T. 17, 31-47.)   On September 23, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 17-30.)  On January 27, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

---

[1]    The reconsideration determination affirming the cessation of benefits listed the cessation date as December 1, 2012.  (T. 60.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following ten findings of fact and conclusions of law.  (T. 19-26.)  First, the ALJ found that the comparison point decision ("CPD")[2] was the August 29, 2008 Fully Favorable ALJ decision.  (T. 19.)  Second, the ALJ found that, at the time of the CPD, Plaintiff had medically determinable impairments of major depressive disorder, personality disorder, and substance-dependence disorder, all of which limited her to the performance of work at all exertional levels with limitations to unskilled work consisting of only simple, routine, repetitive tasks performed in a low-stress environment with no production quotas and infrequent changes, that does not require the ability to make appropriate decisions or attend to a regular schedule, and that requires no more than minimal contact with supervisors, co-workers, and the public.  (*Id*.)  Third, the ALJ found that, as of December 11, 2012 (the date her disability ended), Plaintiff was not engaging in substantial gainful activity. (*Id.*)  Fourth, the ALJ found that, as of December 11, 2012, Plaintiff had medically determinable severe impairments of lumbar disorder, mood disorder, depressive disorder, generalized anxiety disorder, and polysubstance abuse in remission.  (*Id*.)  Fifth, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed

---

[2]    The Social Security regulations indicate the following:

> For the purposes of determining whether medical improvement has occurred, we will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time.

20 C.F.R. § 404.1594(b)(7).  The regulations define the "most recent favorable medical decision" as "the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final." *Id*.

impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 20-21.) More specifically, the ALJ considered Listings 1.04 (disorders of the spine), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders). (*Id.*) Sixth, the ALJ found that medical improvement had occurred as of December 11, 2012. (T. 21.) Seventh, the ALJ found that, based on consideration of all impairments present since December 11, 2012, Plaintiff had the residual functional capacity ("RFC") to perform

> medium work as defined in 20 C.F.R. § 404.1567(c), which involves lifting and/or carrying 50 pounds occasionally and 25 pounds frequently, standing and/or walking for six hours in an eight-hour workday, sitting for six hours in an eight-hour workday, and frequent bending. She is capable of simple, routine, repetitive tasks in a low stress setting, which is defined as occasional decision-making and occasional judgment required.

(T. 22.) Eighth, the ALJ found that Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in her residual functional capacity. (T. 25.) Ninth, the ALJ found there was insufficient information to determine Plaintiff's past relevant work. (T. 25.) Tenth, and finally, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T. 25-26.)

### D.     The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ should not have conducted the hearing and rendered a decision without insisting that Plaintiff obtain representation. (Dkt. No. 10, at 15-17 [Pl.'s Mem. of Law].) More specifically, Plaintiff argues that, due to her ten-and-a-half year period of disability based on mental impairments, it should have been obvious to the ALJ that Plaintiff would not be able to represent herself effectively despite Plaintiff's express desire to proceed without representation. (*Id.*) Plaintiff argues that it was not sufficient for the ALJ to

clearly advise Plaintiff of her right to seek counsel prior to proceeding with the hearing because he did not advise her of the benefits of having representation and did not advise her that she should obtain representation. (*Id*.) Plaintiff argues that the ALJ's failure to ensure Plaintiff had representation was harmful error because the lack of representation led to an under-development of the facts at the hearing. (*Id*.)

Second, Plaintiff argues that the ALJ failed to properly apply the technique for analyzing mental impairments that is mandated by the applicable regulations. (Dkt. No. 10, at 17-20 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the ALJ was required to apply a five-step analysis in assessing Plaintiff's mental impairments, but failed to properly apply the second and third steps, which involved (1) rating the degree of Plaintiff's functional limitation based on the extent to which her impairments interfere with her ability to function independently, appropriately, effectively, and on a sustained basis, and (2) rating the degree of functional limitation with respect to the four enumerated areas of activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation. (*Id*.)

Third, Plaintiff argues that, when analyzing Plaintiff's mental impairments, the ALJ committed error in relying on opinions from sources who did not have the ability to review the whole record. Plaintiff additionally argues that the ALJ failed to properly review the record, instead engaging in an improperly selective review of the evidence that supported a finding of non-disability. (Dkt. No. 10, at 18-20 [Pl. Mem. of Law].) Similarly, in another section of her brief, Plaintiff argues that the ALJ failed to properly develop the record because, although he obtained additional medical records after the hearing, he did not follow up with any physicians for clarification or allow any medical professional or expert to review the entire record. (Dkt. No. 10, at 20 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the ALJ was not qualified to review the mental health treatment records to determine the effect that Plaintiff's impairments imposed on her functional abilities without the assistance of medical professionals.  (Dkt. No. 10, at 20-22 [Pl. Mem. of Law].)  More specifically, Plaintiff argues that the ALJ did not have the medical expertise to translate Dr. Noia's opinion that Plaintiff would have difficulties dealing with stress into specific work-related limitations, and that the ALJ should have re-contacted Dr. Camillo and Dr. Noia to ask them whether they believed Plaintiff could work.  (*Id.*)

Fifth, and finally, Plaintiff argues that the ALJ should have consulted a vocational expert ("VE") at the final step of the continuing disability analysis because, based on Dr. Noia's opinion that Plaintiff appeared to have some difficulty dealing with stress, "[i]t is reasonable to infer that [Plaintiff's] mental impairments would result in excessive absenteeism and time off-task in a competitive work setting," as well as an inability "to perform at a consistent pace without an unreasonable number and length of rest periods and any stress whatsoever would affect Plaintiff's mental health in a negative way, and possibly also with extreme ramifications." (Dkt. No. 10, at 22-23 [Pl. Mem. of Law].)  Plaintiff argues that those non-exertional restrictions were not accounted for by the Medical-Vocational Guidelines and that the ALJ's finding therefore was not supported by substantial evidence.

Generally, Defendant asserts six counter-arguments in support of her motion for judgment on the pleadings.  First, in response to Plaintiff's first argument, Defendant argues that Plaintiff knowingly and effectively waived her right to representation and that the ALJ did everything he was legally bound to do under the applicable regulations to meet his burden to inform Plaintiff of her right to seek and obtain representation.  (Dkt. No. 14, at 11-12 [Def. Mem. of Law].)

Second, in response to Plaintiff's second argument, Defendant argues that the ALJ properly considered Plaintiff's mental impairments according to the analysis required by the regulations for assessing such impairments.  (Dkt. No. 14, at 16-18 [Def. Mem. of Law].)

Third, in response to Plaintiff's third argument, Defendant argues that the ALJ did not have any duty to further develop the record or present more recently submitted evidence to the consultative sources or to re-contact sources for updated opinions because the ALJ possessed a complete medical history on which to base his findings.  (Dkt. No. 14, at 12-16 [Def. Mem. of Law].)

Fourth, in response to Plaintiff's fourth argument, Defendant argues that the ALJ properly evaluated and assigned weight to the medical opinions in the record when assessing the RFC.  (Dkt. No. 14, at 18-20 [Def. Mem. of Law].)

Fifth, Defendant argues that substantial evidence supports the ALJ's finding that there was an improvement in the severity of Plaintiff's mental impairments which resulted in the subsequent lessening of mental restrictions in the RFC assessment.  (Dkt. No. 14, at 21 [Def. Mem. of Law].)

Sixth, and lastly, in response to Plaintiff's fifth argument, Defendant argues that the non-exertional limitations included in the RFC were supported by substantial evidence and that Plaintiff's mental impairments did not impose non-exertional limitations that were of the type or severity that would preclude application of the Medical-Vocational Guidelines as a framework for decision-making.

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

In cases where a claimant is appealing the cessation of benefits based on a subsequent finding that the claimant is no longer disabled, the ALJ must follow an eight-step version of the typical sequential evaluation. 20 C.F.R. § 404.1594. First, the ALJ must determine if the claimant is engaging is substantial gainful activity that would result in a finding that the claimant's disability has ended. 20 C.F.R. § 404.1594(f)(1). Second, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, App. I. 20 C.F.R. § 404.1594(f)(2). Third, the ALJ must determine if there has been medical improvement shown by a decrease in medical severity. 20 C.F.R. § 404.1594(f)(3). Fourth, the ALJ must determine whether the medical improvement is related to the claimant's ability to do work, such as whether there has been an increase in the RFC that was present at the time of the most recent favorable medical determination. 20 C.F.R. § 404.1594(f)(4). If no medical improvement is found or if medical improvement is not related to the ability to work, the ALJ must still determine if claimant's case meets any of the exceptions listed in the regulation. 20 C.F.R. § 404.1594(f)(5). Fifth, if the ALJ finds medical improvement that affects the ability to work or that any of the listed exceptions are present, the ALJ must determine whether the claimant's impairment or

combination of impairments is severe.  20 C.F.R. § 404.1594(f)(6).  Sixth, if an impairment or

combination of impairments is severe, the ALJ must assess the claimant's current ability to do

substantial gainful activity by assessing the claimant's RFC.  20 C.F.R. § 404.1594(f)(7).

Seventh, the ALJ must determine whether the claimant has past relevant work and, if so, whether

the claimant can perform such work with the limitations in the RFC.  20 C.F.R. § 404.1594(f)(8).

Eighth, and finally, if there is no past relevant work that the claimant can perform, the ALJ must

determine whether the claimant can adjust to other work based on her age, education, and RFC.

20 C.F.R. § 404.1594(f)(9).

**III.    ANALYSIS**

> **A.    Whether the ALJ Erred in Accepting Plaintiff's Voluntary Waiver of Her
> Right to a Representative**

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 11-12 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

"Claimants have a statutory right to notification of their options for obtaining legal

representation in [Social Security disability] claims." *Grant v. Astrue*, No. 5:05-CV-1138, 2008

WL 2986393, at *4 (N.D.N.Y. July 31, 2008) (citing 42 U.S.C. §§ 406(c), 1383(d)(2)(B)).  "At

the hearing itself, 'the ALJ must ensure that the [plaintiff] is aware of [her] right [to counsel].'"

*Sindoni v. Colvin*, No. 3:14-CV-0633, 2015 WL 3901955, at *4 (N.D.N.Y. June 25, 2015)

(quoting *Robinson v. Sec'y of Health and Human Servs.*, 733 F.2d 255, 257 (2d Cir. 1984)).

Notably, "[t]he Second Circuit rejected the 'enhanced disclosure requirements' established in

some circuits." *Sindoni*, 2015 WL 3901955, at *4 (citing *Lamay v. Comm'r of Soc. Sec.*, 562

F.3d 503, 508 (2d Cir. 2009)).  "Even if an ALJ does not sufficiently inform a plaintiff of his/her

rights, the lack of counsel, in and of itself, is not a sufficient ground upon which remand or reversal may be based." *Grant*, 2008 WL 2986393, at *5 (citing *Alvarez v. Bowen*, 704 F.Supp. 49, 53 (S.D.N.Y. 1989)).  Rather, "Plaintiff must show prejudice or unfairness in the proceeding." *Grant*, 2008 WL 2986393, at *5 (citing *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 142 (1st Cir. 1987)).  Additionally, "[t]he Commissioner of Social Security is not obligated to provide a claimant with counsel," though where a claimant proceeds *pro se*, "the ALJ has a duty 'to scrupulously and conscientiously probe into, inquire of, and explore all relevant facts.'" *Lamay*, 562 F.3d at 509 (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)).

In *Grant*, this Court rejected the plaintiff's argument that her waiver of the right to representation was ineffective because she had received inadequate notice of that right, noting that plaintiff had received numerous notices advising her of her right to be represented and the ALJ explicitly asked her at the hearing whether she was aware of her right to representation (to which she responded in the affirmative) and whether she wished to proceed without representation (to which she again responded in the affirmative).  *Grant*, 2008 WL 2986393, at *5-6.  In *Sindoni*, this Court found the ALJ had fulfilled her obligation to inform the plaintiff of her right to representation by doing the following: (1) notifying her in writing of her right to representation and her options for obtaining representation; (2) supplying her with a list of organizations that provided legal services free of charge to qualifying individuals; (3) asking at the hearing whether the plaintiff was aware of her right to representation; and (4) orally re-iterating at the hearing that the plaintiff had the right to representation, informing her that some organizations provided representation free of charge, and also discussing with her that some attorneys represent claimants with no upfront payments. *Sindoni*, 2015 WL 3901955, at *4.

11

In terms of providing Plaintiff with information regarding her right to representation, the ALJ in this case took similar steps to those found sufficient in *Grant* and *Sindoni*.  As Defendant notes in her memorandum, the ALJ orally informed her of her right to representation, discussed what the benefits of a representative were (helping to obtain and submit records, explain medical terms, make requests of the administration, protect Plaintiff's rights, and present evidence to the Commissioner), discussed how a representative would be compensated, informing her that there were organizations that provided free representation, and informing her that she had the option to postpone the hearing in order to obtain a representative.  (T. 33-34.)  When Plaintiff answered that she wanted to proceed that day without representation, the ALJ had her sign the Waiver of Right to Representation form and a medical release form to allow the ALJ to obtain additional evidence if needed.  (T. 34-35.)  In addition to the ALJ's statements at the hearing, the record also contains an acknowledgment of Plaintiff's request for a hearing that contains a section outlining her right to representation and including a list of organizations that provide free legal help to qualifying individuals.  (T. 81-88.)

Plaintiff argues that all these measures were not sufficient and that the ALJ should have gone a step further and explicitly advised her that she should obtain representation.  However, the law does not place so great a burden on the ALJ.  Given Plaintiff's ability to timely appeal her cessation of benefits, to submit a request for a hearing, and to present at her scheduled hearing and testify (without any evidence that she was substantially assisted with these tasks), there is nothing to indicate that she was so limited by her mental impairments as to be unable to competently represent herself at her hearing or to make a competent voluntary waiver of her right to representation after being informed about it in great detail.  Nor does the medical evidence indicate as much.  Medical records from late 2013 through the time of her hearing in

April 2014 indicate that, although she continued to experience fluctuating symptoms based on the occurrence of various stressors in her life, she did not have suicidal ideation, had only mildly impaired memory, was often noted as having a normal ability to attend and concentrate, and was noted to be moving into her own apartment/trailer.  (T. 411, 418-19, 421-22, 424-25, 430, 432, 436-37, 440, 442, 444-47, 449-50.)  Most notably, on November 19, 2013, treating mental health physician Dr. Camillo noted that "[n]othing about her psychiatric presentation seems to preclude the possibility of appropriate joint custody" of her child.  (T. 419.)  On April 4, 2014, two weeks prior to her hearing, Dr. Camillo observed that she presented well, was pleasant and personable, did not display any irritability, and was able to verbalize her concerns lucidly.  (T. 449-50.)  The medical evidence does not support Plaintiff's allegations that she was not mentally competent to represent herself at the hearing such that the ALJ would have had reason to doubt the propriety of her voluntary waiver of her right to representation.  The mere fact that Plaintiff had been found disabled due to her mental impairments previously does not provide evidence that she lacked the faculties to understand her decision to proceed without representation.  Consequently, the multiple ways in which the Commissioner informed Plaintiff of her right to representation were sufficient to meet the legal burden imposed here, and the ALJ did not commit error in failing to explicitly advise Plaintiff that she should seek representation.

For all these reasons, there was no legal error in the ALJ's acceptance of Plaintiff's waiver of her right to representation, and remand is not required on this basis.

**B.     Whether the ALJ Failed to Analyze Plaintiff's Mental Impairments According to the Procedure Outlined in the Applicable Regulations**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 16-18 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

In cases where a mental impairment is present, the ALJ is required to apply a special psychiatric review technique when assessing their severity and impact on the claimant's work-related functioning.  *Lewis v. Colvin*, 122 F.Supp.3d 1, 6 (N.D.N.Y. 2015); 20 C.F.R. § 404.1520a.  The regulations indicate that the technique requires the ALJ to first evaluate the pertinent symptoms, signs, and laboratory findings to determine whether there is a medically determinable mental impairment.  20 C.F.R. § 404.1520a(b)(1).  Second, the ALJ must rate the degree of functional limitation resulting from those impairments by considering all relevant and available clinical signs and laboratory findings, the effects of the claimant's symptoms, and how the claimant's functioning might be affected by factors including chronic mental disorders, structured settings, medications, and other treatment.  20 C.F.R. § 404.1520a(b)(2).  In rating the claimant's mental impairment, the ALJ must consider multiple issues and all relevant evidence, assessing and rating the claimant's functioning in the four broad areas of activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation; in doing so, the ALJ should consider the extent to which the claimant's impairments interfere with her ability to function independently, appropriately, and effectively on a sustained basis.  20 C.F.R. § 404.1520a(c)(2)-(3).  After rating the claimant's mental impairments accordingly, the ALJ must determine whether the claimant's mental impairments are severe, whether they meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, App. I, and (if they do

14

not meet or equal a listing) what effect they have on the claimant's RFC.  20 C.F.R. §

404.1520a(d)(1)-(3).  The ALJ is required to incorporate the pertinent findings and conclusions

based on the technique into the written decision, showing the significant history (including

examination and laboratory findings) and the functional limitations that were considered in

reaching a conclusion about the severity of Plaintiff's mental impairments.  20 C.F.R. §

404.1520a(e)(4).

      Defendant is correct in asserting that the ALJ did not fail to apply the second and third

steps of the special technique outlined in 20 C.F.R. § 404.1520a. As an initial matter, this Court

is not convinced that Plaintiff's characterization of the requirements of the special technique is

correct.  A plain reading of the section related to rating the degree of severity of mental

impairments does not reveal that the processes of rating the extent to which the Plaintiff's

impairments interfere with her ability to function independently, appropriately, effectively, and

on a sustained basis, and of rating the impairments based on the four broad functional areas are

unrelated, distinct steps as Plaintiff alleges.  (Dkt. No. 10, at 17-18 [Pl. Mem. of Law]); *see also*

20 C.F.R. § 404.1520a(c)(1)-(4).  Therefore, Plaintiff's argument that the ALJ skipped two steps

in the required analysis is not consistent with what the regulation actually requires.

      Next, although Plaintiff appears to take issue with the fact that the ALJ did not provide a

separate analysis in a specific order of all of the considerations required by the special technique

within specific parts of the decision, neither the regulations nor this Court require such rigid and

formulaic decision writing.  Plaintiff asserts specifically that error occurred because the ALJ did

not include his ratings of Plaintiff's functional impairments in separate steps, but rather lumped

them into his determination of whether Plaintiff met or equaled a mental listing. (Dkt. No. 10, at

17-18 [Pl. Memo. of Law].)  However, Plaintiff never disputes that the ALJ did provide specific

ratings for the enumerated categories of the special technique (a mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation).  (T. 20.)  The ALJ provided ratings as required, determined whether Plaintiff's mental impairments were severe and met or equaled a listing, and provided a discussion of the mental treatment evidence he considered when making those determinations.  (T. 19-21, 23-24.)  The ALJ therefore made and documented all of the required findings to satisfy his duty to apply the special technique, and this Court will not remand merely because the ALJ did not frame his analysis in the specific order in which the regulations lists the process of the special technique.

For all these reasons, the ALJ's application of the special technique for analyzing mental impairments was consistent with applicable legal standards, and remand is not required on this basis.

### C.    Whether the ALJ Failed to Properly Develop and Review the Record as Required by Applicable Legal Standards

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 12-15 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

First, Plaintiff argues that the ALJ failed to properly develop the record. "The ALJ has an affirmative duty to develop a claimant's complete medical history." *Janes v. Colvin*, No. 6:15-CV-1518, 2017 WL 972110, at *3 (N.D.N.Y. Mar. 10, 2017) (citing 20 C.F.R. § 404.1512(d); *Lamay*, 562 F.3d at 508-09).  "[I]t is the well-established rule in [the Second Circuit] 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'"

*Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay*, 562 F.3d at 508-09).  "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Moran*, 569 F.3d at 112 (quoting *Lamay*, 562 F.3d at 508-09). "Under the regulations, an ALJ must 'make every reasonable effort to help the claimant obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports.'" *Janes*, 2017 WL 972110, at *3 (quoting *Hart v. Comm'r*, No. 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010)).  However, "the ALJ need not seek additional information from a given provider when the record contains notes from the provider that are adequate for the ALJ to determine the claimant's disability." *Janes*, 2017 WL 972110, at *3 (citing *Merritt v. Colvin*, 142 F.Supp.3d 266, 270 (N.D.N.Y. 2015)).  "Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." *Janes*, 2017 WL 972110, at *4 (citing 20 C.F.R. § 404.1520b; *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).

"When a claimant properly waives his right to counsel and proceeds *pro se*, the ALJ's duties are 'heightened.'" *Moran*, 569 F.3d at 112 (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  "The ALJ must 'adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered' and by 'scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts.'" *Moran*, 569 F.3d at 112 (quoting *Cruz*, 912 F.2d at 11).  "And when a claimant appears *pro se* and is otherwise impaired, we must 'make a searching investigation of the record to make certain that the claimant's rights have been adequately protected.'" *Id.*

As Defendant notes, the ALJ possessed a complete treatment record at the time he rendered his decision, with medical evidence from 2011 through December 11, 2012 (when Plaintiff was found to be no longer disabled) and mental health treatment evidence from 2013 and 2014. (Dkt. No. 14, at 13 [Def. Mem. of Law].) The ALJ also met his burden in helping the *pro se* Plaintiff by obtaining her mental health records for 2013 through 2014 after the hearing, which he then discussed in the decision. (T. 24.) However, Plaintiff does not appear to take issue with the ALJ's development of the treatment record, but rather challenges that he erred in failing to obtain an opinion from a medical source who had the opportunity to review the full record. (Dkt. No. 10, at 20-21 [Pl. Mem. of Law].) However, the duty to develop the record is not unlimited, even in situations where the Plaintiff is unrepresented. Rather, as noted above, the ALJ need only re-contact sources or obtain additional information where there is a conflict or ambiguity that must be resolved but that cannot be resolved based on the evidence present in the record. *Janes*, 2017 WL 972110, at *4 (citing 20 C.F.R. § 404.1520b; *Rosa*, 168 F.3d at 80; *Schaal*, 134 F.3d at 505). Here, there was sufficient treatment evidence, particularly from the period after Plaintiff's disability ended, for the ALJ to determine whether the opinion evidence already present in the record was an accurate description of Plaintiff's mental-related limitations. This is not a case in which the treatment evidence was scanty or where there was a lack of treatment at important times in the adjudicative period such that the ALJ would not have had adequate evidence to make a determination.

In terms of Plaintiff's corollary argument that the ALJ should have re-contacted either treating physician Dr. Camillo or consultative examiner Dr. Noia to ask them whether they believed Plaintiff could work, this argument is also unavailing. First, in terms of contacting Dr. Camillo, there is no apparent ambiguity or consistent showing of mental symptoms that would

suggest greater limitations in the treatment notes from Dr. Camillo or the other sources from Behavioral Health and Wellness Center which would necessitate obtaining an opinion specifically from Dr. Camillo.  Second, in terms of Dr. Noia, although his opinion that Plaintiff would experience difficulties dealing with stress is somewhat ambiguous in terms of a specific degree of work-related functional limitation, the mental health treatment evidence in the record provided sufficient information for the ALJ to resolve that ambiguity.  *See Monroe v. Comm'r of Soc. Sec.*, No. 5:15-CV-1235, 2016 WL 7971330, at *7-8 (N.D.N.Y. Dec. 29, 2016), report and recommendation adopted, 2017 WL 318838 (N.D.N.Y. Jan. 23, 2017) (noting that, even where a "consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations" so long as it is "well supported by his extensive examination" or it can be made "more concrete" by "the facts in the underlying opinion and other opinion evidence in the record") (citing *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014); *Waldau v. Astrue*, No. 5:11-CV-0925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003); *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 152495, at *8 (S.D.N.Y. Nov. 29, 2001)).  The ALJ discussed that Dr. Noia noted few abnormal findings on his examination (consisting primarily of mildly impaired recent and remote memory) and discussed other pertinent mental treatment findings, particularly from 2013 and 2014.  (T. 23-24.)  The ALJ's consideration of the record as a whole allowed him to interpret Dr. Noia's limitation for dealing with stress and he adequately resolved any ambiguity in that opinion based on his review of all of the evidence.

Second, Plaintiff argues that the ALJ did not properly consider all of the evidence when making his findings.  While the ALJ is legally entitled to resolve conflicts in the evidence, the ALJ "cannot 'cherry pick' only the evidence from medical sources that support a particular

conclusion and ignore contrary evidence." *Walsh v. Colvin*, No. 1:13-CV-0603, 2014 WL 4966142, at \*9 (N.D.N.Y. Sept. 30, 2014) (citing *Royal v. Astrue*, No. 5:11-CV-0456, 2012 WL 5449610, at \*6 (N.D.N.Y. Oct. 2, 2012)); *see also Alsheikhmohammed v. Colvin*, No. 6:14-CV-0461, 2015 WL 4041736, at \*6 (N.D.N.Y. July 1, 2015) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  The ALJ "cannot ignore evidence supporting Plaintiff's claim while at the same time accepting evidence that supports his decision," but rather "must consider all evidence in the record." *Ryan v. Astrue*, 650 F.Supp.2d 207, 216 (N.D.N.Y. 2009) (quoting *Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004); *Armstead ex. rel. Villanueva v. Astrue*, No. 1:04-CV-0503, 2008 WL 4517813, at \*18 (N.D.N.Y., Sept. 30, 2008)).  However, "'an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.'" *Coleman v. Comm'r of Soc. Sec.*, No. 5:14-CV-1139, 2015 WL 9685548, at \*5 (N.D.N.Y. Dec. 11, 2015) (quoting *LaRock ex. rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, at \*7 (N.D.N.Y. Apr. 29, 2011)).

Contrary to Plaintiff's arguments, the ALJ did not err in failing to specifically address certain evidence in particular, including her 2013 suicide attempt and the loss of custody of her youngest child following that attempt.  (Dkt. No. 10, at 19-20 [Pl. Mem. of Law].)  The ALJ provided a balanced discussion of the mental health treatment evidence, including those from around the time of her suicide attempt, and noted both normal and abnormal symptoms from these various examinations.  (T. 24.)  Even if the ALJ did not discuss Plaintiff's September 2013 suicide attempt specifically, the treatment evidence shows that Plaintiff did not have suicidal ideation on a routine basis and her last suicide attempt had been in 2010.  Therefore, Plaintiff's

suicide attempt and ideation in September 2013 appears to be an outlying temporary exacerbation of her symptoms that resolved rather than an indication of her typical mental state. In terms of Plaintiff's loss of custody of her child, Dr. Camillo noted on November 19, 2013– approximately two months after her suicide attempt–that Plaintiff appeared to be psychiatrically stable and that nothing in her psychiatric presentation indicated that she would harm her child or that joint custody rights would be inappropriate. (T. 419.) Consequently, a review of the evidence as a whole indicates that the ALJ's failure to specifically address these two pieces of evidence is not legal error and does not prevent a finding that the ALJ's findings are supported by substantial evidence, as this Court nonetheless is able to determine the rationale underlying the ALJ's decision.

For all these reasons, there was no legal error committed in the ALJ's actions in relation to developing the record or in the ALJ's assessment of the evidence in the record, and remand is not required on this basis.

### D.    Whether the ALJ Failed to Properly Analyze the Opinion Evidence

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 18-20 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"'[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Rosa*, 168 F.3d at 79 (quoting *McBrayer v. Sec'y of Health and Human Serv.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] of testified before him.'").

Here, the ALJ did not substitute his own opinion for that of the competent medical sources, but rather weighed and chose between the medical opinions present in the record. Regarding Plaintiff's physical functioning, the ALJ afforded significant weight to the opinion from consultative examiner Dr. Lorensen and great weight to the opinions from non-examining State Agency medical consultants Dr. Dale and Dr. Findlay.  (T. 22-23.)  Regarding Plaintiff's mental functioning, the ALJ afforded significant weight to the opinions from consultative examiner Dr. Noia and the non-examining State Agency psychological consultants Dr. Tetzo and Dr. Butensky.  (T. 23.)  Plaintiff argues that relying on these multiple opinions was not enough because none of these sources had the opportunity to review more recently submitted evidence. (Dkt. No. 10, at 18, 21-22 [Pl. Mem. of Law].)  However, there is no legal requirement that opinion sources must have access to a full and complete record in order for their opinions to be sufficient to constitute substantial evidence. *See Stottlar v. Colvin*, No. 5:15-CV-0340, 2017 WL 972108, at *7 (N.D.N.Y. Mar. 10, 2017) (noting that "a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinions 'or the ALJ's finding relying thereon'"); *see also* 20 C.F.R. § 404.1519n(c) (which does not indicate that reviewing a claimant's medical records is a requirement for a complete consultative examination).  In *Stottlar*, this Court indicated that the ALJ's reliance on the opinion of a State Agency medical consultant who had not been able to review more recent treatment records was not grounds for remand because the later treatment notes indicated that the plaintiff's mental symptoms had generally improved and there was no indication that the medical consultant would have assessed greater restriction had he been able to review those treatment notes.  *Stottlar*, 2017 WL 972108, at *7.  The case here presents an analogous situation because the mental health treatment from 2013 and 2014 does not show symptoms worse than those

22

present in the records that were available to the State Agency psychological consultants when they rendered their opinions.

On November 14, 2012, Dr. Noia examined Plaintiff, noting a fairly normal mental status exam with good hygiene, appropriate eye contact, normal speech, a congruent affect, intact attention and concentration, average estimated intellectual functioning, and mildly impaired recent and remote memory. (T. 260.) Dr. Noia concluded that Plaintiff could understand and follow simple instructions and directions, could perform simple and some complex tasks, could interact moderately well with others, and would have some difficulty dealing with stress. (T. 261.) On December 6, 2012, Dr. Tzetzo opined overall moderate restrictions in social functioning and maintaining concentration, persistence, and pace with more specific moderate limitations in functions related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (T. 285, 295-96.) Dr. Butensky affirmed many of these same limitations on April 12, 2013. (T. 358-59.)

Although Plaintiff argues that the evidence from after the time these sources submitted their opinions prevents these opinions from constituting a sufficient basis for the ALJ's findings, a review of this evidence as a whole does not reveal a consistent level of functioning that contradicts the findings of these sources. Although Plaintiff points to sporadic notations, including Plaintiff's suicide attempt and indications that she was "volatile and unpredictable outside [the exam] setting" (which Plaintiff admits was noted on only two occasions), the evidence from this later period shows that Plaintiff had much less severe symptoms than those few instances would show. Overall, treatment notes from 2013 and 2014 indicate that, while Plaintiff continued to experience life stressors with consequent fluctuating mood and affect, she was typically noted to be pleasant and personable or comfortable with no more than mild deficits

23

in memory. (T. 331, 368, 378, 381, 383, 385-86, 388, 391, 393-94, 396, 399-401, 405, 411-13, 419, 422, 425, 427, 430, 432, 435-37, 440, 442, 447, 450.)  The ALJ discussed the mental health treatment from 2013 and 2014 and so acknowledged that these fluctuations existed when explaining the basis for his mental RFC finding.  (T. 23-24.)  Although Plaintiff argues that evidence of Plaintiff's stressors–including her "chaotic personal life," the September 2013 suicide attempt, the loss of custody of her children, and the fact she had only supervised visitation rights–from the more recent treatment notes create "reasonable doubt" that the examining and non-examining physicians would have provided different opinions had they considered this newer evidence, this argument ignores the majority of the exam observations and notations from Dr. Camillo and other sources at Behavioral Health and Wellness Center.  (T. 366-450.)  Additionally, the standard of review the Court must follow in this matter is not whether there is "reasonable doubt" in the Commissioner's findings, but rather the much less stringent burden of whether the findings are supported by substantial evidence. *Johnson*, 817 F.2d at 986; *Richardson*, 402 U.S. at 401.   Consequently, this Court concludes that the ALJ properly reviewed the subsequently submitted evidence and that his decision to rely on the opinions of Dr. Noia, Dr. Tzetzo, and Dr. Butensky was within his discretion and supported by substantial evidence based on his personal assessment of those later treatment records and his conclusion that they did not contain evidence that contradicted the overall findings of the opinion sources.

　　　As Plaintiff points out, the only opinions showing limitations contrary to those on which the ALJ relied were GAF scores[3] around the time of her hospitalization for a suicide attempt in

---

[3]　　　Global Assessment of Functioning scores were used in the Diagnostic and Statistical Manual of Mental Disorders as a tool to rate an individual's mental functioning at a given point

2013 that Plaintiff asserts were "consistently" between 45 and 48.[4]  (Dkt. No. 10, at 19 [Pl.

Mem. of Law].)  Plaintiff was assessed with the following GAF scores: 45 on September 25,

2013 (which was five days after her hospitalization from September 12 to 19, 2013); 48 on

November 12, 2013 and December 17, 2013; and of 50 on May 29, 2013 and August 13, 2013.

(T. 388, 401, 406, 415, 427.)  However, Plaintiff was also assessed with the following GAF

scores: 60 on February 28, 2013, March 27, 2013, April 24, 2013, May 11, 2013, and November

19, 2013; and of 55 on May 17, 2013, May 24, 2013, June 11, 2013, June 21, 2013, July 19,

2013, December 30, 2013, January 28, 2014, February 7, 2014, February 11, 2014, March 7,

2014, April 1, 2014, and April 4, 2014.[5] (T. 368, 373, 378, 380, 382, 385, 390, 393, 396, 420,

432, 437. 439, 442, 444, 447, 449.)  Therefore, contrary to Plaintiff's assertions, the record

actually shows that Plaintiff's GAF scores were more consistently in the range of moderate

limitations except for a few examinations preceding and following her hospitalization for a

suicide attempt in September 2013.  Additionally, there was no legal error in the ALJ's decision

to afford limited weight to the GAF scores in the record (which he did note ranged from 45 to

65) based on the fact they were only snapshots of Plaintiff's functioning that were not

---

in time by assessing the severity of deficits in psychological, social and occupational
functioning. *See Global Assessment of Functioning (GAF) Scale*, UNIVERSITY OF ALBANY
COUNSELING CENTER, http://www.albany.edu/counseling_center/docs/GAF.pdf (last visited Mar.
27, 2017).

[4]      GAF scores in the range of 41 to 50 are classified as "serious symptoms (e.g., suicidal
ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social,
occupational, or school functioning (e.g., not friends, unable to keep a job)." *Id.*

[5]      A GAF score of 51-60 is defined as "moderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or
school functioning (e.g., few friends, conflicts with peers or co-workers).  *Id.*

standardized or based on normative data. *See Trombly v. Colvin*, No. 8:15-CV-0567, 2016 WL 5394723, at *14 (N.D.N.Y. Sept. 27, 2016) (accepting that "a GAF score is only a snapshot of estimated functioning at the time the score is assessed") (citing *Schneider v. Colvin*, No. 3:13-CV-0790, 2014 WL 4269083, at *4 (D. Conn. Aug. 29, 2014); *Rock v. Colvin*, 628 F. App'x. 1, 4 n.3 (2d Cir. 2015); *Maniella v. Colvin*, 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014)).  Additionally, GAF scores have been removed from the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders and the Administration, in a July 31, 2013 memorandum, indicated that, although GAF scores are opinion evidence, the ALJ should rely more heavily on the clinician's description rather than the numerical range. *See Rock,* 628 F. App'x. at 4 n.3; *Maniella,* 2014 WL 183957, at *5.  Based on all the evidence, there was no error in the decision to afford limited weight to all the GAF scores in the record.

Plaintiff also argues that the ALJ was "not qualified to review the medical reports of Behavioral Health and Wellness Center and interpret the effect that Plaintiff's impairments have on her functioning relative to her ability to work without the assistance of medical professionals."  (Dkt. No. 10, at 21 [Pl. Mem. of Law].)  However, there are two flaws in this argument.  First, there is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded from doing only the latter. *See Hanson v. Comm'r of Soc. Sec.*, No. 3:15-CV-0150, 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), report and recommendations adopted, 2016 WL 3951150 (N.D.N.Y. July 20, 2016) (noting that, while it is impermissible for an ALJ to interpret "raw medical data" and substitute his own opinion for that of a medical source, it is within the ALJ's power to resolve conflicts in the medical record).  Second, this is not a case where the ALJ lacked

guidance from medical sources.  Rather, there were three physicians who concluded that Plaintiff experienced work-related limitations that resulted in no more than moderate impairment of her mental functioning.  (T. 23, 285, 295-97, 358-60.)  It was well within the ALJ's powers to review the mental status findings from the more recent treatment notes and determine whether they conflicted with or supported the physician's opinions.  *See Hanson*, 2016 WL 3960486, at *9 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

For all these reasons, the ALJ's decision to rely on the opinions of Dr. Noia, Dr. Tzetzo, and Dr. Butensky was supported by substantial evidence, and remand is not required on this basis.

> **E.    Whether the ALJ Erred in Finding that Medical Improvement Relating to Plaintiff's Ability to Work had Occurred**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14, at 21 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

As stated above in Part II.B. of this Decision and Order, the ALJ was required to assess whether Plaintiff experienced medical improvement that affected her ability to work.  20 C.F.R. § 404.1594(f).  Under the "continuing disability review" standard, the burden to demonstrate medical improvement relating to the claimant's ability to perform work "rests with the Commissioner at every step." *DeRonde v. Astrue*, No. 7:11-CV-0998, 2013 WL 869489, at *3 (N.D.N.Y. Feb. 11, 2013) (citing 20 C.F.R. § 404.1594(f)(1)-(8); *Chavis v. Astrue*, No. 5:07-CV-0018, 2010 WL 624039, at *4 (N.D.N.Y., Feb. 18, 2010); *Abrams v. Astrue*, No. 06-CV-0689, 2008 WL 4239996, at *2 (N.D.N.Y. Sept. 12, 2008)).  However, even though the burden rests with the Commissioner, a claimant's benefits may be terminated so long as "there is substantial

evidence demonstrating a 'medical improvement' which enables the individual to engage in substantial gainful activity." *Baker v. Comm'r of Soc. Sec.*, No. 3:12-CV-1715, 2014 WL 1280306, at *4 (N.D.N.Y. Mar. 27, 2014) (quoting *Matice v. Comm'r of Soc. Sec.*, No. 6:99-CV-1834, 2004 WL 437472, at *3 (N.D.N.Y. Feb. 11, 2004)).

Notably, Plaintiff does not make any clear arguments specifically asserting error in the ALJ's finding that Plaintiff experienced medical improvement that related to her ability to perform work, but instead focuses her arguments primarily on reasons that the ALJ's RFC is not supported by substantial evidence due to what she perceives to be an insufficient record and an erroneous weighing and analysis of the evidence. Plaintiff does note, in arguing that the unfavorable decision is unsupported by substantial evidence, that, "[a]s this is a cessation case, the burden is on the Administration to prove that Plaintiff can work"; and she argues that the ALJ did not meet this burden because of the evidence in the record. Although Plaintiff is correct that the ALJ had a greater burden in this case than under the ordinary five-step sequential evaluation, Defendant is also correct that the ALJ needed to show only that his finding of medical improvement related to Plaintiff's ability to work was supported by substantial evidence. (Dkt. No. 10, at 22 [Pl. Mem. of Law]; Dkt. No. 14, at 21 [Def. Mem. of Law].); *see also Baker*, 2014 WL 1280306, at *4.

As noted previously, in rendering his RFC finding, the ALJ properly relied on the opinions of Dr. Noia, Dr. Tzetzo, and Dr. Butensky regarding Plaintiff's mental limitations and made a determination based on a consideration of an adequately developed medical record that included significant continuous mental health treatment from 2011 through 2014. Because this Court finds that there was no error in the ALJ's RFC finding (which included limitations that were less restrictive than at the CPD and which would allow Plaintiff to perform other work at

the final step of the continuing disability review analysis), it also concludes that the ALJ's finding that medical improvement occurred that related to Plaintiff's ability to work is supported by substantial evidence. The ALJ therefore met his burden in this case.

For all these reasons, the ALJ's finding that medical improvement relating to Plaintiff's ability to work was supported by substantial evidence, and remand is not required on this basis.

**F.     Whether the ALJ Erred in Relying on the Medical-Vocational Guidelines as a Framework in Rendering his Final-Step Finding Rather than Consulting a Vocational Expert**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 21-24 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala,* 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

Plaintiff argues that, based on Dr. Noia's opinion that Plaintiff appeared to have some difficulty dealing with stress, "[i]t is reasonable to infer that [Plaintiff's] mental impairments would result in excessive absenteeism and time off-task in a competitive work setting," as well

29

as an inability "to perform at a consistent pace without an unreasonable number and length of rest periods and any stress whatsoever would affect Plaintiff's mental health in a negative way, and possibly also with extreme ramifications."  (Dkt. No. 10, at 22-23 [Pl. Mem. of Law].) However, Plaintiff does not point to any medical evidence that supports these assertions that extreme limitations related to absenteeism and performing at a consistent pace without additional rest periods were the logical conclusion to draw from Dr. Noia's indication that Plaintiff would have difficulty dealing with stress.  Plaintiff's arguments here are contrary to both the findings from Dr. Noia's own examination (which revealed little more than mild memory impairment) and with the other evidence between the CPD and April 2014, which showed that Plaintiff's symptoms were overall helped to an appreciable degree by her medications with some temporary periods of increased depression and anxiety.  Nor did Dr. Noia opine that Plaintiff was unable to deal with any stress (even minimal) without serious negative effects as Plaintiff asserts.  Rather, Dr. Noia indicates only that she would have difficulty dealing with stress, which the ALJ reasonably accommodated with a limitation to work in a low stress setting defined as occasional decision-making and occasional judgment based on the context of Dr. Noia's examination and the rest of the evidence.  (T. 22.) *See also Hart v. Astrue*, 32 F.Supp.3d 227, 235 (N.D.N.Y. 2012) ("To the extent Dr. Magsino's opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue*, 901 F.Supp.2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld.").

The ALJ noted that he specifically considered SSR 83-14 and SSR 85-15 when determining whether Plaintiff's supported non-exertional limitations would preclude application

of the Medical-Vocational Guidelines.  (T. 25-26.)  SSR 85-15 does not expressly indicate whether a limitation to low-stress jobs with occasional decision-making and occasional judgment would impose a significant restriction on performance of unskilled work.  SSR 85-15.  However, other cases suggest that a limitation to low-stress work would not preclude a claimant from performing significant jobs in the national economy.  *See Race v. Comm'r of Soc. Sec.*, No. 1:14-CV-1357, 2016 WL 3511779, at *6 (N.D.N.Y. May 24, 2016) (noting that the vocational expert testified that plaintiff could perform multiple examples of unskilled jobs with the RFC limitations for "simple, repetitive tasks in [] low stress occupations with having no more than occasional decision-making required and more than occasional changes in the work setting"), report and recommendation adopted, 2016 WL 3512217 (N.D.N.Y. June 22, 2016)); *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (noting that the ALJ had posed a hypothetical for "simple, routine, low stress" work that resulted in the vocational expert testifying that plaintiff could perform a significant number of jobs with those mental limitations); *Gates v. Astrue*, 338 F. App'x. 46, 49-50 (2d Cir. 2009) (noting that the vocational expert had testified plaintiff could perform significant numbers of jobs in the national economy in response to a hypothetical question incorporating the ability to remember and follow simple instructions with the need to work in a low-stress environment).  As discussed in the previous sections of this Decision and Order, the ALJ's RFC determination (including his determination regarding Plaintiff's non-exertional limitations) was supported by substantial evidence and encompassed the range of mental limitations supported by the evidence as a whole for the relevant time period.  Consequently, based on the RFC and the above cases that suggest Plaintiff's mental limitations would not preclude her from performing a significant number of occupations in the national

economy, any error the ALJ may have committed in relying on the Medical-Vocational Guidelines rather than calling a vocational expert would have been harmless.

For all these reasons, the ALJ's finding that Plaintiff was not disabled under the framework of the Medical-Vocational Guidelines was supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 7, 2017
      Syracuse, New York

                                  Hon. Glenn T. Suddaby
                                  Chief U.S. District Judge